IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VINCENT HARRIS,

    Petitioner,                                  Case No. 1:06-cv-00462 ALA (HC)

vs.

KATHY MENDOZA-POWERS,

    Respondent.                                  ORDER

_____/

    Pending before the Court are Vincent Harris's ("Petitioner") application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) (doc. 1), Respondent's Answer (doc. 16), and Petitioner's Traverse (doc. 18). Also before the Court are the parties' briefs filed in response to this Court's December 18, 2007 order requesting additional briefing on the applicability of *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007) to this matter. For the reasons discussed below, Petitioner's application is denied.

I

    On October 15, 1985, the San Francisco County Superior Court found Petitioner guilty of second-degree murder, and of using a firearm in the commission of that offense in violation of California Penal Code § 12022.5. He was sentenced to 17 years to life.

    The probation report prepared in connection with that conviction described the

1

facts underlying Petitioner's offense as follows:

> on May 10, 1985 at approximately 4:00 p.m., the defendant fired two shots at Damon Rainey on 26th Street following a verbal altercation. The defendant pulled a .25 caliber automatic pistol and fired two shots at the unarmed victim. After the defendant shot him the first time, the victim ran behind a car; the defendant then shot him a second time. The victim was transported to Mission Emergency Hospital where he was pronounced dead within an hour. The cause of death was multiple gunshot wounds; he sustained a wound to his left chest and right chest.
>
> Witnesses identified the defendant as the perpetrator . . . .
>
> . . . Prior to the shooting, Mr. Rainey had an argument with Lastella Woodruff, whose sister Ramona Woodruff is the defendant's girlfriend. The previous night, Lastella had sold Mr. Rainey a bag of marijuana for $10; he felt he got shorted and asked her for his money back.
>
> . . .
>
> He then took a bag of weed from her. She then walked away. Shortly thereafter, Ramona Woodruff approached Mr. Rainey and they became involved in a shouting match. She left and returned approximately five minutes later with the defendant. The three of them were arguing. Mr. Rainey backed up and the defendant took out his gun and stated that he was going to blow Mr. Rainey's brains out. The defendant then fired the shots.

Report at 4-5.

The probation report also includes a statement from Petitioner. He alleged that he

> had known Mr. Rainey for many years, that he had at times treated Mr. Rainey to sporting and entertainment events, and that Mr. Rainey was the only person who come [sic] to the assistance of the defendant's brother, who died at age 14 of a heart attack while playing basketball. However, he also knew that Mr. Rainey shot someone in the past and was capable of violence.

*Id.* at 5.

On June 22, 2004, the California Board of Prison Terms ("BPT") determined that Petitioner was suitable for parole, and that he "would not pose an unreasonable risk of danger to society or a threat to public safety if released from prison." BPT June 22, 2004 Decision at 85. The BPT noted that Petitioner "has enhanced his ability to function within the law upon release through participation in educational programs." *Id.* Also, it stated that Petitioner received his GED, and "enhanced his ability to function through

self-help programs[,] . . . therapy . . . . [and] through vocational programs." *Id.*

> He has realistic parole plans, which include job offers . . . and family support.  Because of maturation, growth, and greater understanding, he has a reduced probability of recidivism.  And he has maintained positive institutional behavior . . . .  Mr. Harris has also shown signs of remorse.  He's indicated he understands the nature and magnitude of the offense.  He accepts responsibility for his criminal behavior and has a desire to change toward good citizenship.  The most recent psychiatric report . . . . is favorable.

*Id.* at 86-87.

On November 9, 2004, Governor Arnold Schwarzenegger reversed the BPT's decision that Petitioner was suitable for parole.  The Governor concluded that:

> The murder committed by Mr. Harris was exceptionally callous and especially heinous because not only was it committed over $10 worth of drugs–a contemptibly trivial motive–it was perpetrated against an unarmed man who was trying to hide behind a car.  The gravity alone of the second-degree murder committed by Mr. Harris is a sufficient basis to conclude that his release from prison would put society at an unreasonable risk of harm.

Petitioner filed a petition for writ of habeas corpus in San Francisco County Superior Court.  The court denied the petition, concluding:

> some evidence supports the Governor's conclusion that the gravity of the commitment offense crime weighs against a finding that Petitioner is suitable for parole . . . .
>
> . . . one factor indicating parole unsuitability is that the commitment offense was performed in an especially heinous and callous manner . . . .  The fact that the murder arose from a dispute over $ 10 worth of drugs provided the Governor with some evidence that the crime had a trivial motive in relation to the offense and therefore the crime was carried out in an especially heinous and callous manner.
>
> Furthermore, the fact that Petitioner fired at an unarmed man who had tried to hide behind a car to prevent further injury provided the Governor with some evidence to find that the crime was committed in an exceptionally callous and heinous manner.

Petitioner subsequently filed a petition for writ of habeas corpus with the California Supreme Court.  That petition was summarily denied.  In determining whether the California Courts erred in holding that Petitioner's claims failed, the Court looks to

the Superior Court's decision as the last reasoned state court opinion addressing Petitioner's arguments. *See Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002) (explaining that when a subsequent appeal is denied without comment, a federal court must look to the last state court decision to actually address a claim).

Petitioner filed an application for habeas corpus relief in the Northern District of California on March 28, 2006. The case was ordered transferred to this Court on April 18, 2006 because Petitioner is confined in a prison within the Eastern District of California.

## II

### A

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits" in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### B

Petitioner's section 2254(a) application alleges that his incarceration violates due process because the Governor "acted to reverse the grant of a parole date by the [BPT] without a full and reasoned evaluation of all factor [sic] previously considered by the [BPT] in granting the at issue parole date." Application at 6. He also argues that his incarceration violates due process because the Governor's reversal of the BPT's decision "is not supported by the record that was evaluated by the [BPT]." *Id.* Pursuant to

California law, the Governor applies the same factors the BPT applies in determining whether to "affirm, modify, or reverse a Board order granting or denying parole on a murder sentence." *In re Dannenberg*, 34 Cal. 4th 1061, 1086 (2005).  Therefore, this Court reviews the Governor's decision according to the principles applicable to cases in which the BPT has denied parole.

## C

As a preliminary matter, we turn to the parties' supplemental briefs submitted in response to our request for *Irons v. Carey* briefing.  Petitioner argues that he has a liberty interest in parole, and that deprivation of that interest must be supported by some evidence.  He is correct.  Petitioner's claims allege violations of his procedural due process.  "'A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.'" *See McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002) (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)).  As to the first element, "'California's parole scheme gives rise to a cognizable liberty interest in release on parole.'" *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006) (citation omitted).

Respondent argues that the some evidence test established in *Irons* does not apply to the parole context because application of the test in this context is not clearly established federal law.  Respondent also contends that this Court is not bound by *Irons*, because circuit law "has no precedential effect under AEDPA."

In *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Supreme Court held that "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record."  (Citation omitted).  This Court is bound by the Ninth Circuit holding that *Hill*'s some evidence standard applies to parole release proceedings.  *Sass*,

5

461 F.3d at 1128-29; *Irons*, 505 F.3d at 851 ("the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' . . . or is 'otherwise arbitrary'").

According to the Ninth Circuit, the Supreme Court has prescribed a rule, here, the some evidence standard, that governs parole denial claims. This Court cannot contravene that holding. *See Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) (citation omitted) ("District courts are, of course, bound by the law of their own circuit, and 'are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be.'"). Therefore, this Court must reject Respondent's argument that the some evidence standard does not apply.

Petitioner also argues that the Governor's decision to reverse the BPT in his case was not supported by some evidence because it was based solely on the nature of Petitioner's commitment offense. He claims that *Irons v. Carey* stands for the proposition that a due process violation will result if parole is denied based on "an unchanging factor, the circumstances of the offense and conduct prior to imprisonment." He alleges that *Irons* did not grant habeas relief despite the due process violation because the petitioner in that case had "not yet served the minimum time required for the offense."

In *Irons*, 505 F.3d at 853, the Ninth Circuit held that

> where, as here, there is some evidence to support a finding that "the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering" and the "motive for the crime is inexplicable or very trivial in relation to the offense," Cal. Code Regs., tit. 15 § 2402(c)(1)(D)-(E), we cannot say that the state court unreasonably applied *Hill*'s "some evidence" principle.

In *Irons*, the record showed that the BPT relied on the commitment offense in determining that the prisoner was not suitable for release on parole. *Id.* at 852.

The Ninth Circuit limited its holding in *Irons* as follows: "All we held in [*Sass*, 461

6

F.3d at 1125 and *Biggs v. Terhune*, 334 F.3d 910, 912 (9th Cir. 2002)] and all we hold today, therefore, is that, given the particular circumstances of the offenses of these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms." 505 F.3d at 853-54. In an unusual comment in *Irons*, the panel expressed its aspiration that some future court decision will conclude that the BPT has the duty to grant parole where "there was substantial evidence in the record demonstrating rehabilitation." *Id.* at 854.

The Court stated:

> We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.

*Id.*

The *Irons* panel did not cite any authority to support its prognostication that the denial by the state court of habeas corpus relief, under such circumstances, would be "contrary to, or involve[] an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" in violation of 28 U.S.C. § 2254(d)(1). No presently binding Ninth Circuit decision has fulfilled the prediction of the *Irons*'s panel.

In the precedential portion of the *Irons* decision, the Court held that "we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence.'" *Irons*, 505 F.3d at 851. A prisoner's commitment offense, on its own, may justify parole denial if "the Board can 'point to factors beyond the minimum elements of the crime for which the inmate was committed' that demonstrate the inmate will, at the time of the suitability

7

hearing, present a danger to society if released." *Id.* at 852 (quoting *Dannenberg*, 34 Cal. 4th 1061,1071 (2005)). An offense committed in an especially heinous, atrocious or cruel manner is a factor tending to show unsuitability for release. Cal. Code. Regs., tit. 15 § 2402(c)(1). Factors to be considered in determining whether a crime was "especially heinous, atrocious or cruel manner" include:

> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>
> (C) The victim was abused, defiled or mutilated during or after the offense.
>
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

*Id.*

Pursuant to binding Ninth Circuit precedent, Petitioner's commitment offense on its own justifies the Governor's denial if the Governor's decision was based on factors beyond the minimum elements of the crime and demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released.

D

Petitioner was convicted of second-degree murder with a use of firearm enhancement.

> In California, '[s]econd degree murder is defined as the unlawful killing of a human being with malice aforethought, but without the additional elements- i.e., willfulness, premeditation, and deliberation-that would support a conviction of first degree murder.' *People v. Nieto Benitez*, 4 Cal.4th 91, 102, 13 Cal. Rptr. 2d 864, 840 P.2d 969 (1992). 'Malice, for the purpose of defining murder, may be express or implied. ([Cal. Penal Code] § 188.) It is express 'when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature.' ([Cal. Penal Code] § 188; People v. Mattison (1971) 4 Cal.3d 177, 182, 93 Cal.Rptr. 185, 481 P.2d 193.) Implied malice is present 'when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.' ([Cal. Penal Code] § 188; *People v. Mattison*, supra.).'

*Hillmon v. Mendoza-Powers*, 2008 U.S. Dist. LEXIS 40200 (E.D. Cal. May 19, 2008). Pursuant to California Penal Code § 12022.5(a), "any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense."

Here, the Governor explained that the murder was "exceptionally callous and especially heinous because not only was it committed over $10 worth of drugs–a contemptibly trivial motive–it was perpetrated against an unarmed man who was trying to hide behind a car." The Governor's reasons for reversing the BPT explain that the offense was "carried out in a manner which demonstrates an exceptionally callous disregard for human suffering" and "the motive for the crime is inexplicable or very trivial in relation to the offense." *See* Cal. Code. Regs., tit. 15 § 2402(c)(1)(D), (E). The Governor's reasons go beyond the minimum elements of the crime, and speak to the inherently violent nature of the offense. Therefore, the Governor's decision was supported by some evidence.

For the same reason, the Superior Court of San Francisco County's order upholding the Governor's decision was not a decision "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

It is therefore hereby ORDERED that Petitioner's application for habeas corpus relief is DENIED.

DATED: June 6, 2008

        /s/ Arthur L. Alarcón
        UNITED STATES CIRCUIT JUDGE
        Sitting by Designation